# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DYLAN KANE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 18-5285 |
| | : | |
| WAL-MART STORES EAST, LP, *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                     December 31, 2018

Pennsylvanian Dylan Kane seeks damages arising from his slip and fall in a Pennsylvania Wal-Mart. He sued Wal-Mart Stores East, LP, Wal-Mart, and Pennsylvanian Greg Pulley—the store manager at the time of the incident—in Pennsylvania state court for negligence. Defendants removed to this Court and now move to dismiss the negligence claim against Mr. Pulley arguing Mr. Kane alleges only claims of nonfeasance against Mr. Pulley, which do not provide a basis for negligence recovery against an employee/store manager. Unlike cases allowing claims against store employees who either participated in the challenged conduct or allegedly knew of the pre-existing condition before the incident and failed to correct the condition, Mr. Kane only pleads inaction by Mr. Pulley with no pre-existing knowledge of the spill risk in this part of the Wal-Mart store leading to his slip and fall. Under long-established Pennsylvania law governing this negligence claim against an individual employee, we grant Mr. Pulley's uncontested motion to dismiss. As we dismiss the only Pennsylvania defendant, we enjoy subject matter jurisdiction in this dispute seeking more than $75,000 between citizens of different states.

I.   **Plead facts.**

On December 24, 2016, Pennsylvanian Dylan Kane visited the Wal-Mart in Eddystone, Pennsylvania.[1]  As he left the store's men's restroom at approximately 5:30 p.m., "he slipped and fell on a puddle of water."[2]  The fall caused Mr. Kane to suffer various injuries to his hip, head, and back.[3]  He sued Wal-Mart, Wal-Mart Stores East, LP, and Greg Pulley—then the store manager—in Pennsylvania state court, alleging a single negligence claim against each of the three defendants.[4]

Although the parties agree Messrs. Kane and Pulley are Pennsylvania citizens, Defendants, notwithstanding this lack of diversity, removed the case invoking our diversity jurisdiction under 28 U.S.C. § 1332(a), which "requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."[5]  Defendants argued we must disregard Mr. Pulley's Pennsylvania citizenship under the doctrine of fraudulent joinder, which, "[i]n a suit with named defendants who are not of diverse citizenship from the plaintiff," allows the diverse defendant to "still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction."[6]  Mr. Kane did not move for remand based on fraudulent joinder.  Defendants moved to dismiss the negligence claim against Mr. Pulley, arguing Mr. Kane alleges no basis for liability against Mr. Pulley.[7]  Mr. Kane did not file an opposition to the motion to dismiss.[8]

Mr. Kane's allegations against Mr. Pulley target Mr. Pulley's training and supervision of his employees.  Mr. Kane alleges Mr. Pulley "fail[ed] to properly train employees under his supervision" in various respects, including: (1) "preventing slip and fall hazards in bathrooms that could have prevented this accident;" (2) "addressing reported hazardous conditions in the store that could have prevented this accident;" (3) "safe monitoring and inspection procedures

that could have prevented this accident."[9] He alleges Mr. Pulley "fail[ed] to properly monitor and supervise employees under his supervision, in a manner that could have prevented this accident."[10] He also alleges Mr. Pulley "fail[ed] to implement and enforce safety rules and procedures for employees under his supervision that could have prevented this accident," and he "fail[ed] to train and supervise his management staff, in reasonable safety procedures that could have prevented this accident."[11]

## II. Analysis

The issue is whether Mr. Kane pleads a basis of liability for negligence against Mr. Pulley as the store manager. Mr. Kane argues he adequately pleads Mr. Pulley's liability under the "participation theory, under which a corporate officer, employee, or other agent 'who takes part in the commission of a tort by the corporation is personally liable therefor.'"[12] But Pennsylvania courts have interpreted the requirement of an officer or employee participating in the wrongful acts "to permit liability for an agent's misfeasance, but not for 'mere nonfeasance.'"[13] Our Court has explained the difference between misfeasance and nonfeasance: "[m]isfeasance consists of 'the doing of something which ought not to be done, something which a reasonable man would not do, or doing it in such a manner as a man of reasonable and ordinary prudence would not do it.'"[14]

In the seminal Pennsylvania Supreme Court case *Wicks v. Milzoco Builders, Inc.*,[15] plaintiff homeowners suffering damages from the development's drainage problems sued individual officers[16] of the developer of the development in which they resided, claiming the officers "were aware, or should have been aware, of potential drainage problems at [the development] and, therefore, were negligent in failing to take appropriate measures to eliminate, or at least minimize, such problems."[17] The Pennsylvania Supreme Court held the plaintiff

3

homeowners sufficiently alleged the personal participation of the development's officers. The court emphasized the officers' alleged actual knowledge of the condition, but cautioned "the mere averment that a corporate officer *should have known* the consequences of the liability-creating corporate act is subject to a motion to strike for impertinence and proof of that averment alone is insufficient to impose liability."[18] The court found "the pertinent averments in these complaints can be read as setting forth, generally, that the individual appellees actually knew that the location of the proposed . . . Development created, at least, an unreasonable risk of the drainage problems which occurred and that, having the power to do so, they deliberately ordered the work to proceed."[19]

The parties' reliance on recent cases from Chief Judge Sánchez and Judge Leeson inform our reasoning today. Judge Leeson found potential individual liability against Wal-Mart employees who sold to an intoxicated consumer at 3:00 AM ammunition allegedly used to kill three persons.[20] Chief Judge Sánchez first denied a supervisor's liability based on an initial pleading like Mr. Kane's allegations but allowed an amended complaint pleading the supervisor's knowledge of construction defects leading to injury.[21] Neither case involved the fortuity of a slip and fall at a certain spot in a superstore. Neither case stands for the proposition of holding a store manager personally liable for negligence when he neither creates the hazard nor has pre-existing knowledge and fails to act.

In *Ramos v. Wal-Mart Stores, Inc.*,[22] a group of men murdered three individuals with ammunition one of the perpetrators purchased from a Wal-Mart store.[23] The parents and administrators of the three victims sued Wal-Mart and store employees who allegedly sold the ammunition in Pennsylvania state court, alleging the company and its employees were "liable for the deaths of their children because they permitted an intoxicated twenty-year-old to purchase

handgun ammunition at three o'clock in the morning."[24]  Defendants produced affidavits from the employees "declaring that they were not involved."[25]  Judge Leeson remanded to state court due a lack of diversity.  Judge Leeson rejected the Defendants' attempts to undermine the factual allegations of the complaint with affidavits.[26]  Judge Leeson also rejected Defendants' argument no negligence claim is cognizable against the store employees because they personally did not participate in the ammunition sale.[27]  Judge Leeson applied the Pennsylvania rule "'corporate officers may be held liable for misfeasance' but not 'for mere nonfeasance.'"[28]  Judge Leeson found even if the store employees "did not personally participate in the sale, that does not necessarily mean that a claim of negligence against them could not be asserted."[29]  "The Complaint can fairly be read to allege not that [the employees] failed to provide the cashier with any training at all, but that the training that they did provide was inadequate."[30]  Judge Leeson found, "[s]o understood, Plaintiffs are claiming that [the employees] are liable for 'the improper performance of an act,' not the mere 'omission of an act which a person ought to do.'"[31]  Unlike Mr. Pulley, the named defendants in *Ramos* allegedly sold the ammunition at 3 AM to an intoxicated person who then, along with two other men, went on a shooting spree.

Judge Lenihan also recommended remand in *Smoyer v. Care One, LLC*, by aptly describing the distinction between an allegation defendant failed to take an act and an allegation defendant carried out an act improperly.[32]  Judge Lenihan found specific "allegations can fairly be read to allege not that [the Defendant] failed to provide *any* care or services, but that the care and services she did provide were inadequate, insufficient, inappropriate and/or untimely. As such, in the noted subparagraphs, Plaintiff is claiming that [Defendant] is 'liable for the improper performance of an act, not the mere omission of an act which a person ought to do.'"[33]

5

Our Chief Judge more recently addressed the distinction between allegations of misfeasance and nonfeasance in *Aldorasi v. Crossroads Hospitality & Management Company, LLC*,[34] in which Chief Judge Sánchez first dismissed "failure to supervise" claims against supervisors but then allowed an amended complaint against the supervisors which plead individual knowledge. The plaintiff and her husband sustained injuries "when they were struck by falling building material while exiting a Philadelphia hotel where they had parked their car."[35] In state court plaintiffs sued the entity operating or managing the hotel as well as the hotel's general manager and the hotel's director of engineering.[36] The defendants removed, asserting plaintiff sued the individual non-diverse employees solely to defeat diversity jurisdiction.[37] The defendants also moved to dismiss the claims against the individual defendants on the same ground.[38] Plaintiff opposed the motion to dismiss, moved to remand to state court, and also moved for leave to amend the complaint "to clarify and detail her allegations against [the individual employees]."[39]

Chief Judge Sánchez found, unlike the allegations of actual knowledge in *Wicks*, the injured plaintiffs "fault[ed] [the employees] only for what they failed to do."[40] Chief Judge Sánchez held, "[w]hile the Complaint can be fairly read to allege that [the employees] knew or should have known of the dangerous condition of the wall or ceiling immediately above the hotel's 17th Street exit and had a duty to properly maintain the hotel premises, Defendants are alleged to have breached this duty solely through inaction."[41] Chief Judge Sánchez, however, examined the proposed amended complaint and found it stated a claim against the individual defendants.[42] Plaintiff specifically proposed an amendment showing the employees' direct involvement in the workmanship. "Plaintiff's proposed amended complaint adds allegations that Ray specifically authorized inadequate repairs of the ceiling above the 17th Street exit and that

6

McFeeters specifically directed co-employees to inadequately repair the ceiling, a known hazard."[43] Given the individual non-diverse defendants' knowledge and direct role in the inadequacy of repairs, our Chief Judge remanded the amended complaint to state court due to a lack of diversity.

Judge Quiñones Alejandro's opinion in *Jackson v. Burlington Coat Factory*,[44] similarly illustrates the principle a plaintiff cannot merely allege a supervisor or employee is liable because he or she has responsibility for a store. The plaintiff in *Jackson* "attempted to walk up an escalator that was not running when he fell and injured his left knee, neck, and back."[45] Plaintiff sued the store and the manager in state court.[46] After the Defendants removed the case arguing plaintiff fraudulently joined the non-diverse employee, plaintiff moved to remand. Judge Quiñones Alejandro denied the motion to remand, finding the operative complaint "devoid of any allegation that the existing dangerous condition, *i.e.*, the broken escalator, was the 'result of an active, knowing participation by' [the employee]." [47] Judge Quiñones Alejandro found "Plaintiff alleges only that it was [the employee's] lack of action or omissions that led to the broken escalator or Plaintiff's exposure to it," which fail to "rise to the requisite level of actionable misfeasance under Pennsylvania law to support personal liability under the participation theory."[48]

We find Mr. Kane's allegations analogous to those at issue in the first complaint reviewed in *Aldorasi* and in *Jackson*. Mr. Kane alleges Mr. Pulley failed to provide certain training and supervision, and the training Mr. Kane did provide his employees inadequately prepared them to prevent and address such situations. But Mr. Kane has not plead action by Mr. Pulley or knowledge—or a reason to know—a particular risk of a slip and fall in a certain area of the store and then failing to train on prompt clean-up.[49]

7

The parties have not addressed a store manager's individual liability for a slip and fall in a large retail store. A slip and fall can occur in the instant when the liquid hits the floor. It happens from time to time and, absent allegations or evidence of knowing a repeated risk of liquid on the floor in a certain spot in a retail store (e.g., entry way on a snowy/rainy day), we cannot find the absence of training in instantaneously cleaning up a slip and fall is misfeasance. The store manager could provide the very best training and not be able to ensure no person ever slipped in his store. Absent pleading his knowledge or faulty training on instantaneously cleaning up all liquid at all times, we cannot presently hold Mr. Kane's allegations rise to the level of misfeasance by the store manager. Unlike the plaintiff in *Aldorasi* who argued she would amend to allege pre-existing knowledge of the construction defects, Mr. Kane does not argue he could or would amend to allege Mr. Pulley's pre-existing knowledge. And unlike the middle-of-the-night sale of ammunition to an intoxicated person in *Ramos*, Mr. Kane does not sufficiently plead Mr. Pulley's personal liability for negligent supervision.

We are mindful this decision, unlike the cases cited to us, addresses a motion to dismiss for failing to state a claim against Mr. Pulley. We must examine the allegations in this context; in the remand context, by contrast, we do not examine the merits and may more readily defer to the possibility of a claim against the non-diverse defendant. As Chief Judge Sánchez described the remand analysis, "[t]he question is not whether the complaint states a claim sufficient to withstand a Rule 12(b)(6) motion to dismiss against the nondiverse defendant, but whether there is 'a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants.'"[50]

As such, today's decision addresses only the present allegations against Mr. Pulley. Mr. Kane elected not to oppose the motion to dismiss or seek leave to amend to possibly plead Mr. Pulley's misfeasance.[51]

**II.      Conclusion**

Mr. Kane has not plead anything more than the store manager failed to act in training the Wal-Mart employees to instantaneously clean up every spill in the superstore regardless of the manager's knowledge or store history with spills in the certain store area which may alert him to a need to more specifically monitor risks of slipping. Absent these allegations, and as Mr. Kane elected not to oppose the motion to dismiss the store manager, we grant the store manager's motion to dismiss in the accompanying Order.

---

[1] ECF Doc. No. 1 at 20 ¶ 9.

[2] *Id.* at ¶ 10.

[3] *Id.* at 21 ¶ 18.

[4] *Id.* at 19–25.

[5] *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

[6] *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006).

[7] ECF Doc. No. 5.

[8] Mr. Kane untimely responded, ECF Doc. No. 9, to our December 10, 2018 show cause order, in which we directed Mr. Kane to show cause "why we should not disregard the citizenship of Greg Pulley for diversity jurisdiction purposes," ECF Doc. No. 4 at 1. Mr. Kane has not responded to Defendants' partial motion to dismiss.

[9] ECF Doc. No. 1 at 24 ¶ 25.

[10] *Id.* at 25 ¶ 25.

[11] *Id.*

[12] *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 300 (E.D. Pa. 2016) (quoting *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983)).

[13] *Id.* (quoting *Wicks*, 470 A.2d at 90).

[14] *Id.* (quoting *Sannuti v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 14-587, 2014 WL 1515650, at *2 (E.D. Pa. Apr. 16, 2014)).

[15] 470 A.2d 86 (Pa. 1983).

[16] *Wicks*, 470 A.2d at 87 ("Appellees Miller, Cook and Zollers are respectively President, Vice-president and Secretary of Milzoco Builders, Inc., the developer of Monroe Acres. In addition, Cook and Zollers are apparently sole shareholders of Carroll Builders, Inc., the builder of a home which appellants, the Bauers, purchased in the development.").

[17] *Id.* at 88.

[18] *Id.* at 90 (emphasis added).

[19] *Id.*

[20] *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 463–64 (E.D. Pa. 2016).

[21] *Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, No. 17-4580, 2018 WL 4613939, at *7–10 (E.D. Pa. Sept. 25, 2018).

[22] 202 F. Supp. 3d 457 (E.D. Pa. 2016).

[23] *Id.* at 460–61.

[24] *Id.* at 461.

[25] *Id.* at 462.

[26] *Id.* at 463 ("[T]o accept the truth of the affidavits would be to reject the truth of their well-pleaded allegations.").

[27] *Id.*

[28] *Id.* (quoting *Wicks*, 470 A.2d at 90).

[29] *Id.*

[30] *Id.* at 463–64.

[31] *Id.* at 464 (quoting *Brindley v. Woodland Vill. Rest., Inc.*, 652 A.2d 865, 868 (Pa. Super. 1995)).

[32] *Smoyer v. Care One, LLC*, No. 16-1696, 2017 WL 575070, at *6 (W.D. Pa. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 573573 (W.D. Pa. Feb. 13, 2017).

[33] *Id.* (quoting *Ramos*, 202 F. Supp. 3d at 464).

[34] No. 17-4580, 2018 WL 4613939 (E.D. Pa. Sept. 25, 2018).

[35] *Aldorasi*, 2018 WL 4613939, at *1.

[36] *Id.*

[37] *Id.*

[38] *Id.* at *3 (E.D. Pa. Sept. 25, 2018) ("Consistent with their position that Ray and McFeeters were fraudulently joined, Defendants also moved to dismiss Plaintiff's claims against these individual Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 18, 2017.").

[39] *Id.* (citation and internal quotation marks omitted).

[40] *Id.* at *7.

[41] *Id.* (internal citation omitted).

[42] *Id.* at *1 ("However, because it is undisputed that Plaintiff can state a claim against these individual Defendants—and, indeed, has done so in her proposed amended complaint—and upon consideration of the relevant equitable factors, the Court will exercise its discretion under 28 U.S.C. § 1447(e) to permit Plaintiff to amend her Complaint to rejoin Ray and McFeeters as defendants and will remand the case to the Court of Common Pleas of Philadelphia County.").

[43] *Id.* at *3.

[44] *Jackson v. Burlington Coat Factory*, No. 17-2459, 2017 WL 3534983 (E.D. Pa. Aug. 17, 2017).

[45] *Id.* at *1.

[46] *Id.*

[47] *Id.* at *3 (quoting *Brindley*, 652 A.2d at 870).

[48] *Id.* at *4.

[49] *Compare* ECF Doc. No. 1 at 24 (alleging Mr. Pulley "fail[ed] to *properly* train employees under his supervision") (emphasis added); *with Ramos*, 202 F. Supp. 3d at 464 (construing allegation of improper training as claim the employees "are liable for the improper performance of an act, not the mere omission of an act which a person ought to do.") (citation and internal quotation marks omitted).

[50] *Aldorasi*, 2018 WL 4613939, at *4 (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).

[51] *Cf. id.* at *8 ("The Court next considers Plaintiff's motion for leave to amend, in which Plaintiff seeks to clarify and detail her allegations against Ray and McFeeters so as to correct any pleading deficiencies in the claims against these Defendants in her original Complaint.") (citation and internal quotation marks omitted).